UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA HATTICH, | Case No.  26-cv-02419-JSC |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANTS' MOTION TO DISMISS** |
| UA LOCAL 342 and CHE TIMMONS, | Re: Dkt. No. 7 |
| Defendants. | |

Plaintiff sues Defendants for discrimination and sexual harassment under Title VII and the Fair Employment and Housing Act ("FEHA").  (Dkt. No. 1 at 11-21.)[1]  Now pending before the Court is Defendants' motion to dismiss.  (Dkt. No. 7.)  Having carefully considered the parties' submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the May 8, 2026 hearing, and GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.  Although Plaintiff does not plausibly allege an adverse employment action supporting her sex discrimination or retaliation claims under Title VII, she does plausibly allege sexual harassment under Title VII.  However, Plaintiff fails to state a FEHA claim because she has not plausibly alleged timely exhaustion of administrative remedies.

**BACKGROUND**

**I.     COMPLAINT ALLEGATIONS**

UA Local 342 ("UA Local") is a labor union, and Che Timmons is UA Local's business manager.  (Dkt. No. 1 at 11.)  Plaintiff was hired by UA Local in 2017 and worked "as a clerical worker/assistant office coordinator for several years."  (*Id.* at 11-12.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

At UA Local, Plaintiff "experienced and observed repeated incidents of inappropriate conduct." (*Id.* at 12.)  For example, Todd Mendoza, a union member, "directed unnecessary or inappropriate tasks" and "a derogatory remark toward Plaintiff, calling her a 'bitch.'" (*Id.*) Although she reported her concerns to Heather Zamora, the Office Coordinator, no "meaningful corrective action was taken." (*Id.*)  Mr. Timmons also "directed Charlene Walton to contact Plaintiff, after hours, with instructions that Plaintiff not leave the office at the same time as her husband, Mathew Hattich," and "directed Plaintiff to not sit with her husband or asked Plaintiff to move away from him in public settings" at workplace events.  (*Id.*)  "Plaintiff was [also] kissed on her mouth by a Union member, Joe Campbell." (*Id.* at 18.)  And during a meeting, another employee, Carlos Diaz, told Plaintiff "she was 'hot.'" (*Id.*)  Plaintiff was also "asked on dates and asked if she is 'one of the bad girls that likes to 'polish' the Business Agents' 'nobs.'" (*Id.*)  "In October 2024, Plaintiff experienced sexual harassment, as did another female employee, during an awards meeting, resulting in a panic attack at work and her early departure," and she "later overheard Timmons state 'we pay for these girls.'" (*Id.* at 16.)

Plaintiff also observed and reported several concerning incidents, including when "a female employee took another employee's phone from his hand and answered it without knowing who was calling," and when "a female employee approached a male employee and touched his head shortly after he arrived at work following a haircut." (*Id.* at 13.)  Plaintiff also observed Mr. Timmons "repeatedly belittle" an "employee [] injured while off on personal time"; "belittle another employee and instruct the employee's family to leave an apprenticeship graduation ceremony"; "refer to another employee using a derogatory term"; and "make comments that trivialized serious physical and mental health conditions, including matters related to recovery." (*Id.* at 13-14.)  She also "heard dismissive inquiries made regarding at least two employees' retirement plans." (*Id.* at 14.)  Plaintiff also witnessed Randy Loyd "engage in 'hazing' behavior toward another employee," including "directing the employee to perform a transfer of a member to a different local," and comment a female employe "was 'doing a real good job,' despite not performing any task at that time." (*Id.* at 13-14.)

Furthermore, "[d]uring COVID, only women were required to apply for unemployment

2

benefits," and "Plaintiff had to produce procedures so that they would have some guidance on how [new hires should] handle their new roles, despite not having adequate support." (*Id.* at 13.) "In April 2024, Plaintiff was forced to travel to an office professionals' meeting" although she had disclosed "being out of the office was not sustainable for her and caused immense amounts of stress." (*Id.* at 16.) And when Plaintiff "was ill with COVID, she was required to train Randy Loyd, who had previously engaged in abusive behavior towards Plaintiff," and "[n]o other employees were required to perform this task under the same circumstances, creating additional stress and health risks." (*Id.* at 14.) "Plaintiff experienced repeated incidents of harassment and unsafe interactions involving Randy Loyd." (*Id.* at 15.) For example, when Plaintiff was working alone on a Saturday, Mr. Loyd "entered the office and approached Plaintiff," and "Plaintiff did not feel safe and began to cry." (*Id.*) "Plaintiff was repeatedly exposed to images of Randy in social settings," and he "would enter the office and sit behind Plaintiff while waiting for meetings, which contributed to an ongoing feeling of threat and lack of safety." (*Id.*) Once, when Plaintiff's child was visiting her in the office, "Randy attempted to involve Plaintiff's child in work-related tasks, which made her child feel uncomfortable." (*Id.*) He also required her "to work on a rental agreement and promotional flyer for [his] home, a personal task unrelated to her official duties." (*Id.*)

"Beginning in September 2024, Plaintiff worked on a modified schedule and disclosed PTSD, long-term trauma recovery, and a pregnancy loss to Che Timmons," but she "experienced discrimination, retaliation, and continued harassment." (*Id.* at 16.) In January 2025, "an incident occurred involving Randy Loyd and Marc Lopez during a member service issue," and Plaintiff reported the incident to Ms. Walton, but "experienced a severe physiological response when [Mr. Lopez] followed her into [Ms. Walton's] office." (*Id.*) "Plaintiff requested leave and sought medical care," and "was placed on medical disability effective January 31. 2025." (*Id.*) While on disability leave, Plaintiff's son asked Plaintiff for direction on dues payment, but she was unable to assist because she was on leave. (*Id.*)

## II.    PROCEDURAL HISTORY

Plaintiff sued Defendants in California Superior Court for (1) employment discrimination,

42 U.S.C. § 2000e-2(a); (2) sexual harassment, 42 U.S.C. §§ 2000e; (3) retaliation, 42 U.S.C. § 2000e-3(a); (4) failure to prevent discrimination, Cal. Gov't Code § 12940(k); and (5) hostile work environment, Cal. Gov't Code § 12923.  (Dkt. No. 1 at 11-21.)  Defendants removed based on federal question jurisdiction, (*id.* at 1-5), and now move to dismiss Plaintiff's complaint, (Dkt. No. 7).

**DISCUSSION**

**I.      TITLE VII (CAUSES OF ACTION I, II, AND III)**

**A.      Exhaustion of Administrative Remedies**

Before bringing a Title VII claim, a plaintiff "must exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency . . . and receiving a right-to-sue letter."  *See Scott v. Gina Morena Enters., LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)).  The charge also has a "verification requirement" to "protect[] employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury."  *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002).  Specifically, "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."  42 U.S.C. § 2000e-5(b).

Title VII's "charge-filing" and verification requirements are not jurisdictional requirements, but rather their absence is an affirmative defense the defendant must plead and prove.  *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 550-52 (2019); *Kraus v. Presidio Tr. Facs. Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009).  "[P]laintiffs ordinarily need not 'plead on the subject of an anticipated affirmative defense.'"  *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (citations omitted).  When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss."  *Id.* (citation omitted).  So, a motion to dismiss a Title VII claim based on a failure-to-exhaust defense should only be granted if "the defense is 'clearly indicated' and 'appear[s]' on the face of the pleading.'"  *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1045 (9th Cir. 2013) (citations omitted), *vacated on other grounds*, 573 U.S. 942 (2014).

4

Defendants argue Plaintiff's Title VII claims must be dismissed because Plaintiff has not verified her EEOC charge. Plaintiff's complaint only alleges she "timely filed a charge" with the EEOC and obtained a right-to-sue letter and attaches such letter from December 23, 2025. (Dkt. No. 1 at 16-17, 23-24.) Defendants attach a December 15, 2025 Notice of Charge letter from the EEOC to UA Local, which states UA Local "will receive electronic notification when a perfected charge . . . is received from the Charging Party." (Dkt. No. 7-1 at 4.)[2] So, Defendants argue Plaintiff's EEOC charge was imperfect and therefore unverified.

The verification requirement "demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC." *See Edelman*, 535 U.S. at 113; *see also id.* at 112 (rejecting the proposition "the charge must be verified when filed"). While the December 15, 2025 Notice of Charge supports an inference Plaintiff had not perfected, and thus verified, her charge by that date, that fact does not compel the inference Plaintiff never did so. And although Defendants assert they "never received a notification that Plaintiff had perfected her charge and there is no evidence that Plaintiff verified the charge under oath," Defendants provide no evidence supporting their assertions. (Dkt. No. 7 at 8.) Even if Defendants had done so, the Court generally "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Harris*, 738 F.3d at 1045 (explaining a motion to dismiss based on a failure-to-exhaust affirmative defense should only be granted if "the defense is 'clearly indicated' and 'appear[s] on the face of the pleading'"). So, Defendants have not shown as a matter of law that Plaintiff has not verified her complaint to the extent necessary to fulfill Title VII's charge-filing requirement.

Defendants also seek dismissal of Plaintiff's claims against Mr. Timmons because,

---

[2] The Court may take judicial notice of the EEOC notice of charge as a "matter[] of public record." *See Lawson v. Reynolds Indus.*, No. CV-04-6533 FMC (FMOx), 2005 WL 8165610, at *2 (C.D. Cal. Feb. 4, 2005) (citing *Gallo v. Bd. of Regents of Univ. of California*, 916 F. Supp. 1005, 1007-08 (S.D. Cal. 1995); *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1076 n.3 (C.D. Cal. 2002); *Martinez v. City of Richmond*, No. C 95-2549-TEH, 1995 WL 729308 (N.D. Cal. Dec. 4, 1995)).

United States District Court
Northern District of California

according to Defendants, Plaintiff did not file an EEOC charge against him. *See Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990) ("Title VII claimants may only sue those named in the EEOC charge."). But not only does Plaintiff allege she "timely filed a charge . . . alleging violations of Title VII by Defendants," but in the attached right-to-sue letter, the EEOC copied both Mr. Timmons and UA Local. (Dkt. No. 1 at 16, 24.) Defendants argue the Notice of Charge letter from the EEOC to UA Local only mentions Plaintiff's charge "against your organization," i.e., the charge against UA Local. (Dkt. No. 7-1 at 4.) But on a motion to dismiss, the Court draws inferences in Plaintiff's favor, and Defendants' argument does not show it is "obvious on the face of [Plaintiff's] complaint" she has not filed an EEOC charge against Mr. Timmons. *See Rivera*, 735 F.3d at 902.

The Court therefore declines to dismiss Plaintiff's Title VII claims for failure to exhaust administrative remedies.

### B.    Adverse Employment Action

To state a Title VII discrimination claim, a plaintiff must allege "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *See Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 656 (9th Cir. 2006) (quotation marks and citation omitted). "[A]n adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citation omitted). "Adverse employment actions include 'assigning more, or more burdensome, work responsibilities' as well as 'termination, demotion, failing to promote, denial of an available job, adverse job assignments, official discipline, and significant changes in compensation or benefits.'" *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1091 (S.D. Cal. 2020) (quoting *Davis*, 520 F.3d at 1089; *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 905 (E.D. Cal. 2017)).

Defendants argue Plaintiff has not plausibly alleged any adverse employment action. In response, Plaintiff first contends "she was compelled to perform duties outside her role [and]

6

United States District Court
Northern District of California

subjected to gender-based disparities in workload and authority." (Dkt. No. 11 at 10.) Specifically, Plaintiff alleges she was required to: "produce procedures" for new hires "despite not having adequate support"; "to travel to an office professionals' meeting" despite her disclosure "being out of the office was not sustainable for her"; and "to train Randy Loyd" while she was ill with COVID. (Dkt. No. 1 at 13-14, 16.) As an initial matter, Plaintiff does not allege any of these duties fell outside her role as a "clerical worker/assistant office coordinator." (Dkt. No. 1 at 11.) *See Mendoza v. DeJoy*, No. 21-CV-00991-H-JLB, 2022 WL 18832234, at *6 (S.D. Cal. Dec. 20, 2022) ("Assigning additional work that is included in an individual's job description is not an adverse employment action." (citations omitted)). Furthermore, "assigning more, or more burdensome, work responsibilities, is [only] an adverse employment action" if it "materially affects the compensation, terms, conditions, or privileges of . . . employment." *Davis*, 520 F.3d at 1089 (quotation marks and citation omitted). And because Plaintiff does not allege any facts supporting a plausible inference these duties materially changed her employment conditions, she has not plausibly alleged they constituted adverse employment actions.

Plaintiff next argues she was "placed on disability leave following sustained discriminatory treatment and harassment." (Dkt. No. 11 at 10.) In her complaint, Plaintiff alleges after she "experienced a severe physiological response" and "requested leave," she "was placed on medical disability." (Dkt. No. 1 at 16.) "[U]nder some circumstances, placement on administrative leave can constitute an adverse employment action." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013). However, "being placed on paid administrative leave is not an adverse employment action [if] it does not deprive a plaintiff of any term, condition or benefit of employment." *Gannon v. Potter*, No. C 05-2299SBA, 2006 WL 3422215, at *5 (N.D. Cal. Nov. 28, 2006), *aff'd*, 298 F. App'x 623 (9th Cir. 2008) (citation omitted). Although Plaintiff alleges she was unable to help her son with his dues payments while she was on leave, (Dkt. No. 1 at 16), she does not allege disability leave deprived her of pay, opportunities for promotion, or any other term, condition, or benefit of her employment. *See Dahlia*, 735 F.3d at 1079 (considering allegations "administrative leave prevented [the plaintiff] from taking the sergeant's exam, required him to forfeit on-call and holiday pay, and prevented him from furthering his investigative experience"

7

sufficient to plausibly allege an adverse employment action). So, Plaintiff has not plausibly alleged her placement on disability leave constituted an adverse employment action.

However, Plaintiff also alleges several comments and actions, including as part of her second cause of action for sexual harassment. "[W]orkplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action." *Schouker v. Swarm Indus., Inc.*, No. 24-CV-07373-JSC, 2025 WL 1022141, at *4 (N.D. Cal. Apr. 3, 2025) (quotation marks and citation omitted); *see also Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) ("Harassment is actionable only if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). To evaluate "whether the discriminatory conduct was 'severe or pervasive,' [courts] look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (quotation marks and citations omitted). Plaintiff alleges several derogatory and inappropriate comments related to her sex, being kissed by a union member, and other conduct "result[ed] in a panic attack at work and her early departure," caused Plaintiff to "not feel safe" and "cry," and led to "a severe physiological response" followed by her leave. (Dkt. No. 1 at 12, 14-16, 18.) So, Plaintiff has plausibly alleged discriminatory conduct which "materially affect[ed] the terms and conditions of [her] employment," and therefore sufficed as an adverse employment action. *See Martinez*, 481 F. Supp. 3d at 1091-92 (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal 4th 1028, 1036 (2005)).

So, the Court denies Defendants' motion to dismiss Plaintiff's second cause of action for sexual harassment. However, the Court grants Defendants' motion to dismiss Plaintiff's first and third causes of action for sex discrimination and retaliation because Plaintiff has not plausibly alleged her assigned duties or disability leave constituted adverse employment actions under Title VII.

8

United States District Court
Northern District of California

## II.    FEHA (CAUSES OF ACTION IV AND V)

"Before filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies." *Wills v. Superior Court*, 195 Cal. App. 4th 143, 153 (2011), *as modified on denial of reh'g* (May 12, 2011); *see also* Cal. Gov't Code § 12965.  Under FEHA, employees who believe they have suffered discrimination must first file a complaint with the Department of Fair Employment and Housing ("DFEH") or the Civil Rights Department ("CRD") "identifying the conduct alleged to violate FEHA."  *See Wills*, 195 Cal. App. 4th at 153; *see also Yanez-Davison v. United Parcel Serv., Inc.*, No. 2:23-CV-03016-DC-AC, 2025 WL 619129, at *2 n.2 (E.D. Cal. Feb. 26, 2025) (noting DFEH became CRD in July 2022, so the terms are used interchangeably).  DFEH or CRD then investigates the claims, and either issues "an accusation for hearing before the Commission" or provides the complainant with a "right-to-sue letter," at which point the plaintiff can bring her claims as a civil action.  *See Schifando v. City of Los Angeles*, 31 Cal. 4th 1074, 1082 (2003), *as modified* (Dec. 23, 2003) (citations omitted).

Unlike a plaintiff bringing Title VII claims, a plaintiff bringing FEHA claims bears the "burden to plead and prove timely exhaustion of administrative remedies, such as filing a sufficient complaint with [CRD] and obtaining a right-to-sue letter." *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014) (quotation marks and citations omitted).  Furthermore, "[a] right-to-sue letter from the EEOC is not a substitute for a right-to-sue letter from the [CRD] for the purpose of state law claims under FEHA." *James v. United Furniture Workers Local 89262*, No. 21-CV-03893-JCS, 2021 WL 3616776, at *9 (N.D. Cal. Aug. 16, 2021) (citing *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1726 (1994) ("[An] EEOC right-to-sue notice technically [does] not satisfy the jurisdictional requirement that [a plaintiff] have exhausted her administrative remedies as to the asserted violations of [FEHA].")).

Because Plaintiff does not allege she obtained a right-to-sue letter from CRD or DFEH, she has not plausibly alleged timely exhaustion of administrative remedies and fails to state a FEHA claim.  Plaintiff argues EEOC and CRD "operate under a formal work sharing agreement that allows charges filed with one agency to be deemed constructively filed with the other," such that her EEOC charge suffices to exhaust administrative remedies under FEHA.  (Dkt. No. 11 at 11.)

9

United States District Court
Northern District of California

"Based on cross-filing agreements between the EEOC and the DFEH, an administrative charge filed with the EEOC might in at least some circumstances also place the DFEH on notice of a plaintiff's claims."  *See James*, 2021 WL 3616776, at \*10 (citation omitted).  However, Plaintiff must also allege "either that [s]he received a right to sue letter from the DFEH or that a year passed without the DFEH taking action on [her] claim." *Id.* at \*10 (explaining because "California law allows the DFEH a period of one year before it is required to act," allegations a year has passed since the charge are also sufficient) (citing *Reed v. UBS Sec., LLC*, No. C 09-5237 MHP, 2010 WL 3119200, at \*4 (N.D. Cal. Aug. 3, 2010)).

To argue she does not need to allege receipt of a DFEH or CRD right-to-sue letter, Plaintiff relies on *Surrell v. California Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008).  In *Surrell*, the Ninth Circuit held because Title VII's exhaustion requirements are non-jurisdictional, "a plaintiff entitled to receive a right-to-sue letter from the EEOC . . . may proceed [with Title VII claims] absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency." *Id.* at 1105.  Here, Plaintiff instead seeks to proceed with her FEHA claims absent a right-to-sue letter from the appropriate state agency because she has received a right-to-sue letter from the EEOC.  So, *Surrell* is inapposite.

As Plaintiff has not plausibly alleged timely exhaustion of administrative remedies, the Court grants Defendants' motion to dismiss her FEHA claims.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss Plaintiff's First and Third Causes of Action for sex discrimination and retaliation under Title VII and her Fourth and Fifth Causes of Action under FEHA.  However, the Court DENIES Defendants' motion to dismiss Plaintiff's Second Cause of Action for sexual harassment under Title VII.

Regardless, because Plaintiff may plausibly allege other adverse employment actions or administrative exhaustion of her FEHA claims, the Court grants Plaintiff leave to amend her complaint.  *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)).  Plaintiff's deadline to file an

amended complaint is May 29, 2026.  Plaintiff may not add new claims or defendants without the Court's leave.  If Plaintiff does not file an amended complaint, the case will proceed on Plaintiff's Second Cause of Action.

This Order disposes of Docket No. 7.

**IT IS SO ORDERED.**

Dated: April 30, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

11